**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Civil Case No. 14 CV 1653 |
| v. | ) | (related Criminal Case No. 03 CR 175) |
| | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| ANTHONY SINGLETON | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Anthony Singleton's motion to vacate, set aside, or correct sentence by person in federal custody pursuant to 28 U.S.C. § 2255 [1]. For the reasons stated below, the Court denies Petitioner Singleton's motion to vacate, set aside, or correct sentence [1].

## I. Background

### A. The Underlying Proceedings

On February 20, 2003, a grand jury returned a three-count indictment charging Anthony Singleton with the theft of mail matter and the possession of postal arrow keys, in violation of 18 U.S.C. §§ 1704 and 1708. During the ensuing proceedings, Judge David H. Coar appointed three different attorneys to represent Singleton. R. 10, 21, 22, 34-36, 59. Singleton, however, was unable to work with any of these appointed attorneys. Judge Coar ultimately allowed all three of these attorneys to withdraw from their representation of Singleton, so Singleton proceeded *pro se* at trial and sentencing. R. 10, 21, 22, 34-36, 59.

The relationship between Singleton and his third appointed counsel apparently began to disintegrate around December 2003, when Singleton began to file various documents asserting challenges to the district court's jurisdiction. R. 45-49. In January 2004, based upon Singleton's filings, Judge Coar ordered a psychological examination of Singleton in order to determine

whether he was competent to stand trial. R. 51. The examination report was filed on March 18, 2004, and Judge Coar subsequently set the matter for trial. R. 59-60. The jury trial commenced on May 3, 2004 and, after a two day trial, the jury returned verdicts of guilty on all counts. R. 76, 81. Throughout the period before and after trial, Singleton continued to file various documents making untenable claims. R. 53-55, 62-63, 67-68,70-72, 83-86, 89-90, 92-93, 96.

At sentencing, the government demonstrated that Singleton utilized stolen mail to steal the identities of hundreds of victims and that he caused verifiable losses exceeding $120,000. Judge Coar sentenced Singleton to 115 months imprisonment and three terms of supervised release, with each term of supervised release to be served concurrently. R. 99. Singleton continued to file various documents making the same types of jurisdictional claims after Judge Coar's sentencing (see, *e.g.*, R. 100-116), but never sought to appeal his conviction or sentence. Singleton also continued to file various documents making similar, untenable claims throughout the period of his incarceration. R. 101-10, 113-16, 118-23, 125-26, 128-31 133-35, 137.

**B. The Revocation Proceedings**

Singleton was released from his term of imprisonment on September 2, 2011, and reported to the U.S. Probation Office. At that time, Singleton was instructed to report back to the U.S. Probation Office on September 14, 2011, in order to meet with his probation officer and review the terms of his supervised release. Singleton reported to the office on September 14, 2011, but refused to meet with his probation officer. The probation officer subsequently contacted Singleton, and Singleton told the probation officer that he was not under any obligation to meet with the officer. On or about September 29, 2011, the probation officer filed a special report with the Court noting that Singleton had violated the terms of his supervised release. The government subsequently moved to revoke Singleton's supervised release. R. 145.

Singleton appeared for a hearing in November 2011, and the Court entered and continued the government's motion. The Court also appointed counsel to represent Singleton in connection with the revocation proceedings. R. 148-49.

Singleton continued his pattern of claiming, among other things, a lack of jurisdiction and the government's release of claims against him during the pendency of the revocation proceedings. For example, on December 8, 2011, Singleton filed a document entitled "Notice of Prohibition Affidavit" in which he claimed, among other things, as follows:

> As such indicated above, all encumbrances held by the UNITED STATES against the trust described as "Defendant" were caused to be removed by an operation of law, and a contractual bond was established which strictly prohibits the UNITED STATES under federal law against attachments, liens, the issuance, docketing, filing, or the levy of or under any judgment, decree, execution, acquisition of any interest of any nature whatsoever by reason of a judgment or decree, for the fulfillment of any condition, or the exercise of any power of appointment, power of attorney, or other power presumed to exist, performed within the UNITED STATES for the purpose, intent, or effect of which is to create, surrender, release, transfer, or alter, directly or indirectly, any right, remedy, power, privilege, or interest with respect to any property ANTHONY SINGLETON, aka ANTHONY SINGLETON HALL has an interest * * *.

R. 153. Singleton also attached UCC Financing Statements that he apparently filed with the Illinois Secretary of State in which Singleton claimed that he had interest in the personal property of the Attorney General of the United States as well as the United States Department of Justice. R. 153.[1]

On December 30, 2011, Singleton was arrested by the New York Police Department on charges of grand larceny and possession of a forged instrument. Following his arrest in New York, this Court entered a warrant for Singleton's arrest when he failed to appear for a rule to show cause hearing. R. 155.

[1] Singleton has made numerous such filings in Illinois and other states alleging non-existent debts owed by prosecutors, agents, BOP officials, judges, and probation officers. Singleton attached two such filings, naming the prosecutor and probation officer, to a "Notice of Interest" filed with the Court on November 14, 2011. R. 147.

Singleton was convicted in New York and sentenced to time served on March 26, 2013, after being in custody for a period of approximately fifteen months. Upon the completion of his sentence, local authorities turned Singleton over to the United States Marshal's Service in New York. Singleton was removed from Southern District of New York to this district, where he appeared on May 22, 2013. R. 158, 163. In June 2013, Singleton's appointed counsel moved to withdraw from the representation based upon "irreconcilable differences." R. 165. On June 18, 2013, the Court granted counsel's motion to withdraw and ordered that Singleton would have to represent himself *pro se* based upon his refusal to cooperate with counsel. R. 167-68. Consistent with his prior pattern of obstruction, Singleton continued to challenge the jurisdiction of the Court and was generally not responsive to inquiries from the Court. On July 18, 2013, the Court found Singleton in violation of his terms of supervised release, revoked all three terms of supervised release, and imposed a total term of thirty-six months imprisonment. R. 172. Despite being advised of his right to appeal, Singleton never filed an appeal of the sentence.

## II. Analysis

Singleton filed the current motion on March 7, 2014. In the motion, Singleton contends that four reasons exist to set aside his sentence. First, he contends that the Court violated his constitutional right to representation by forcing him to proceed without an attorney at his revocation hearing. Second, he complains that he was never provided with a written statement of the conditions of supervised release or otherwise advised of those conditions by the U.S. Probation Office. Third, he argues that the Court improperly calculated the advisory Guideline range. Finally, he contends that the Court erred in relying on a certification of disposition from the clerk's office in New York and complains about not receiving credit for time spent in state custody prior to his sentencing in this matter.

Relief under § 2255 is an uncommon remedy because it requires the district court "to reopen the criminal process to a person who already has had an opportunity for full process." *McMahan v. United States of America,* 2009 WL 509869, at *1 (N.D. Ill. Mar. 2, 2009). A § 2255 motion to vacate to set aside or correct a sentence will be granted only if the petitioner establishes "that the district court sentenced [her] in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Hays v. United States*, 397 F.3d 564, 566-67 (7th Cir. 2005)). If a § 2255 petitioner does not raise a claim in her direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal (see *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005)), that enforcing the procedural default would lead to a 'fundamental miscarriage of justice" (*Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006), or that there has been a change of circumstances involving facts or law (*Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007)).

All of the claims advanced by Singleton in this case have been procedurally defaulted by his failure to file a timely appeal. A § 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal." *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992). A claim cannot be raised in a § 2255 motion if it could have been raised on direct appeal. *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009); *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002); *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). A petitioner can only avoid the application of this procedural default if he shows good cause for and prejudice from the failure to appeal. *Galbraith*, 313 F.3d at 1006; *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005).

Here, despite being advised of his appellate rights by the Court, Singleton never filed an appeal and, thereby, procedurally defaulted all of his claims. Furthermore, Singleton has failed to show good cause for and prejudice from the failure to appeal. Although he did not file an appeal of his sentence, Singleton has filed numerous other lawsuits seeking to challenge the Court's sentence. See *Internal Revenue Service ex rel. Anthony Singleton Hall v. United States*, 13 C 8434 (N.D. Ill.) (J. Lefkow); *Anthony Singleton-Hall v. United States, et al.*, 14 C 25 (N.D. Ill.) (J. Der-Yeghiayan). These lawsuits have all been dismissed. Singleton appealed the district court's dismissal of his lawsuit in Case No. 13 C 8434, but the appeal also was also dismissed. See Appeal Nos. 13-3868, 13-3878, and 14-1045 (7th Cir.). Singleton's ability to bring multiple lawsuits challenging the Court's sentence, but failure to appeal his sentence, belies any argument that he had good cause for failing to appeal. Moreover, a petitioner's *pro se* status alone does not constitute cause in a cause-and-prejudice analysis. *Smith v. McKee*, 598 F.3d 374, 385 (7th Cir. 2010) (citing *Harris v. McAdory*, 334 F.3d 665, 668 (7th Cir. 2003)); *Barksdale v. Lane*, 957 F.2d 379, 385-86 (7th Cir. 1992). Thus, all of Singleton's claims are procedurally defaulted.[2]

[2] Although the Court need not reach the merits of any of Singleton's procedurally-defaulted claims, the Court briefly addresses his claim that his sentence should be set aside because it was premised upon an improperly calculated Guidelines range. Singleton contends that his highest violation was a Grade B violation, not a Grade A violation, and therefore that his sentencing range was only eighteen to twenty-four months. The Court agrees that Singleton's highest graded violation, namely, his commission of a state crime in New York, was a Grade B violation, and not a Grade A violation. Aside from the fact that this claim is procedurally defaulted, a miscalculation of the Guidelines range generally does not warrant relief under § 2255 as such an error does not constitute a constitutional or jurisdictional error and typically does not result in a miscarriage of justice. See *Hawkins v. United States*, 706 F.3d 820, 823-24 (7th Cir. 2013); *Welch v. United States*, 604 F.3d 408, 412 (7th Cir. 2010); *Scott v. United States*, 997 F.2d 340, 342-43 (7th Cir. 1993); but see *Narvaez v. United States*, 674 F.3d 621 (7th Cir. 2011). Here, there was no miscarriage of justice resulting from the error in the Guidelines calculation. The sentence imposed fell well below the statutory maximum of seventy-two months imprisonment and the Court was aware that the Guidelines were advisory, as they have always been for supervised release violations. Furthermore, the Court would have arrived at the same decision regardless of the advisory range. In imposing sentence, the Court noted that Singleton's sentence of imprisonment should be equivalent to the thirty-six month term of supervised release that Singleton refused to serve as a result of his obstructive conduct in refusing to cooperate with his probation officer.

## III. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner Singleton a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller–El,* 537 U.S. at 336; *Evans v. Circuit Court of Cook County, Ill.,* 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El*, 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). And in cases where a district court denies a habeas claim on procedural grounds, the habeas court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. See *Slack*, 529 U.S. at 485.

Consistent with the discussion above, the Court concludes that Petitioner Singleton has not made a substantial showing of the denial of a constitutional right, nor would reasonable

jurists differ on the Court's assessment of Petitioner's claims. Thus, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## IV. Conclusion

For the reasons set forth above, the Court denies Petitioner Singleton's motion to vacate, set aside, or correct sentence by person in federal custody pursuant to 28 U.S.C. § 2255 [1], declines to certify any issue for appeal, and directs the Clerk to enter judgment in favor of the United States.

Dated: July 17, 2014

Robert M. Dow, Jr.
United States District Judge